Johnnie WILLIAMS, Plaintiff,

v.

**DAIRY FRESH ICE CREAM, INC., Defendant.**

No. CIV.A. 2:95–1041–RV–M.

United States District Court,
S.D. Alabama,
Northern Division.

Oct. 10, 1997.

Richard J. Ebbinghouse, Gordon, Silberman, Wiggins & Childs, P.C., Birmingham, AL, for Plaintiff.

Willis C. Dairy, Elizabeth D. Rehm, Mobile, AL, for Defendant.

**ORDER**

VOLLMER, District Judge.

This matter is before the court on the following documents:

1) Declaration of Barry Dean Williams, (doc. 43), and plaintiff Johnnie Williams' notice of filing the declaration (doc. 43);

2) Motion to strike declaration of Barry Dean Williams, (doc. 47), filed by defendant Dairy Fresh Ice Cream, Inc.;

3) Plaintiff's opposition to defendant's motion to strike (doc. 49);

4) The statements and arguments of counsel made during the pretrial conference held on September 12, 1997;

5) "Plaintiff's Response to Dairy Fresh [sic] Proposed Determination of Undisputed Fact," (doc. 45); and

6) "Motion to Correct Response to Defendant's Proposed Fact" (doc. 52).

Plaintiff Johnnie Williams has asserted, *inter alia,* a Title VII/ § 1981 claim against his former employer, Dairy Fresh Ice Cream, Inc. Although plaintiff seeks relief under Title VII and § 1981, his factual allegations under both statutes are the same.

Plaintiff is an African–American. According to the parties' pretrial document, plaintiff's supervisor, Roy Morgan,[1] called plaintiff a "nigger," or used that racially derogatory term in plaintiff's presence, ten to fifteen times during plaintiff's sixteen years of employment with defendant. Additionally, there is evidence that Mr. Morgan called plaintiff a "black son of a bitch" once and "boy" once during those sixteen years.

*Faragher v. City of Boca Raton,* 111 F.3d 1530 (11th Cir.1997), teaches that, under limited circumstances, an employer may be directly or indirectly liable for its employee's harassing conduct. Foregoing the path of indirect liability, plaintiff asserts that Dairy

---

1. Mr. Morgan is not an African–American.

Fresh is directly liable for the hostile environment racial harassment created by plaintiff's supervisor. In *Faragher*, the Court of Appeals for the Eleventh Circuit stated:

> An employer is directly liable for hostile environment [racial] harassment if the employer knew or should have known of the harassment and failed to take prompt remedial action. A plaintiff can prove an employer's knowledge of harassment by showing she complained to higher management.
>
> . . . .
>
> A plaintiff also can prove an employer's knowledge by showing that the harassment was pervasive enough to charge the employer with constructive knowledge.... [W]e do not agree with the district court's apparent belief that simply because conduct is pervasive enough to create an abusive work environment the employer should be charged with knowledge of the conduct. The question of notice to the employer is distinct from the question of the environment's abusiveness.

*Faragher*, 111 F.3d at 1538 (citations omitted).

Although the *Faragher* court chose not to define "higher management," the parties appear to agree that in this case "higher management" includes Tommy Stewart—the Dairy Fresh plant manager and Mr. Morgan's supervisor. It is undisputed that plaintiff never complained to "higher management"—that, is, to Mr. Stewart—of Mr. Morgan's harassing conduct. Plaintiff further alleges that Mr. Morgan usually racially harassed him when no one else was present.

The only evidence offered by plaintiff that Dairy Fresh's higher management had knowledge of Mr. Morgan's harassing conduct is the declaration of Barry Dean Williams, another former employee of defendant whose supervisor was also Mr. Morgan.[2] Barry Dean Williams' declaration appears inadequate to raise a factual question supporting a finding of notice to higher management of conduct of hostile environment racial harassment.[3]

Defendant has moved to strike the declaration, and the parties have fully briefed the issue. Although the court is reluctant to strike the only evidence standing between plaintiff and an adverse summary judgment, the court is of the opinion that the declaration is due to be stricken.

The complaint was filed on December 21, 1995. Four months later, the parties held two Federal Rule of Civil Procedure 26(f) planning meetings (on April 19 & 24, 1996). In compliance with Rule 24(a)(1) and plaintiff's counsel's specific request, defendant, in its initial disclosures, provided plaintiff a list of terminated Dairy Fresh employees. This list included Barry Dean Williams. Plaintiff's and defendant's initial disclosures both stated that the only persons "likely to have discoverable information relevant to disputed facts alleged with particularity in the pleadings, identifying the subjects of the information," (Rule 24(a)(1)(A)), were plaintiff, Mr. Morgan, and Mr. Stewart.

The parties proceeded with discovery for six months. On October 9, 1996, plaintiff filed a motion to extend the discovery deadline by four months (to February 7, 1997), on the ground that "plaintiff's attorney has been unavailable for discovery due to his wife's ongoing chemotherapy and most recent hospitalization." The court granted the motion.

---

2. Barry Dean Williams is not related to plaintiff Johnnie Williams.

3. Barry Dean Williams' declaration is not a model of appropriate evidence needed to counter a motion for summary judgment. The declarant does not say whether plaintiff was one of the persons the declarant observed being racially harassed by Mr. Morgan or whether plaintiff had knowledge of harassment complained of by the declarant. Although the declarant states that he worked at Dairy Fresh for eight years, he does not say when during those eight years Mr. Morgan engaged in the harassing conduct (Was it throughout declarant's eight years of employment? The first two years? The last two years?). The declarant also does not state when he complained to Mr. Stewart about Mr. Morgan's conduct, nor does he say with much specificity what comments, incidents, actions, etc., of Mr. Morgan the declarant reported to Mr. Stewart.

On January 31, 1997, plaintiff deposed Mr. Morgan and Mr. Stewart. On February 3, 1997, defendant moved for an extension of the discovery cutoff because it had not yet received plaintiff's Social Security records that it had sought since the inception of this litigation. That motion was granted, as was a second, similar motion, thus extending plaintiff's deposition date to June 20, 1997.[4]

Dairy Fresh filed its motion for summary judgment on April 30, 1997. The court granted plaintiff's counsel, Richard Ebbinghouse, two extensions of time to respond,[5] and plaintiff timely filed his response on July 7, 1997. The response included Barry Dean Williams' declaration.

Prior to the filing of Barry Dean Williams' declaration, Mr. Ebbinghouse had never disclosed to Dairy Fresh that Barry Dean Williams was a person "likely to have discoverable information relevant to disputed facts alleged with particularity in the pleadings, identifying the subjects of the information." Rule 24(a)(1)(A). More specifically, plaintiff's counsel never disclosed that Barry Dean Williams had knowledge that notice had been given to defendant's higher management of Mr. Morgan's racial harassment. Barry Dean Williams' declaration was filed 1½ years after the complaint was filed, a year after Mr. Ebbinghouse served plaintiff's initial disclosures, and well after the close of the bulk of discovery.

Federal Rule of Civil Procedure 26(e) provides, *inter alia:*

A party who has made a disclosure under subdivision (a) or responded to a request for discovery with a disclosure or response is under a duty to supplement or correct the disclosure or response to include information thereafter acquired if ordered by the court or in the following circumstances:

(1) A party is under a duty to supplement at appropriate intervals its disclosures under subdivision (a) if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

Undisputedly, Mr. Ebbinghouse did not supplement or correct plaintiff's initial disclosures to include Barry Dean Williams as required by Rule 26(e). In an effort to explain this omission, Mr. Ebbinghouse offers a number of reasons, none of which are sufficient.

First, the fact that defendant initially disclosed Barry Dean Williams to plaintiff (on a list of terminated Dairy Fresh employees) does not by itself put defendant on notice that Barry Dean Williams was "likely to have discoverable information relevant to the disputed fact[]" of whether higher management had notice of Mr. Morgan's harassing conduct. A list of terminated employees would likely be relevant to plaintiff's age discrimination claim and perhaps relevant to the issue of whether plaintiff was terminated by defendant or whether he voluntarily quit. Such a list would not necessarily be relevant to the issue of whether higher management had notice of hostile environment racial harassment. Contrary to Mr. Ebbinghouse's suggestion, the mere fact that an employee "may have knowledge of how [Dairy Fresh] employees were treated" simply by virtue of his/her employment at Dairy Fresh does not mean that every former (and current) Dairy Fresh employee is a person "likely to have discoverable information relevant to the disputed fact[]" of whether higher management had notice of Mr. Morgan's harassing conduct or any other issue in this litigation.

Second, the court is (and was) aware of the illness and ensuing death of Mr. Ebbinghouse's wife in the fall of 1996. It is precisely for that reason the court granted Mr.

---

4. Discovery was extended from February to June for the limited purposes of taking the depositions of plaintiff and three other persons and for obtaining plaintiff's Social Security records.

5. Upon the filing of defendant's motion for summary judgment, the court entered its standard briefing schedule, under which plaintiff had 15 days from the date the motion was filed to submit a response. By granting Mr. Ebbinghouse' requested extensions, the court more than quadrupled the standard response time, giving him 68 days to submit a response.

Ebbinghouse's request for a four-month extension of discovery.

The court is (and was) also aware of the five-week class action litigation that apparently enveloped Mr. Ebbinghouse and the other attorneys of his firm.[6] As previously noted, the court granted Mr. Ebbinghouse's two extensions of time in which to respond to the motion for summary judgment. Even though disclosure during the extended response time would have still been untimely, it is nonetheless an additional block of time in which no disclosure was made that Barry Dean Williams was a person with discoverable knowledge of disputed facts in this litigation.

The court is (and was) aware that Linda West, an attorney not affiliated with Mr. Ebbinghouse's firm, is also listed as counsel on the complaint, that Ms. West has not requested permission to withdraw,[7] and that no reason has been given as to why she was not able to prosecute this action in Mr. Ebbinghouse's stead.

If Mr. Ebbinghouse needed a second extension of the discovery deadline, he could have requested it. He did not. (The court notes that it granted every extension of time request filed.).

Third, Mr. Ebbinghouse indicates that he did not learn of Barry Dean Williams' knowledge of discoverable information relevant to the disputed fact of whether higher management had notice of Mr. Morgan's harassing conduct until July 4, 1997. Specifically, in opposition to the motion to strike the declaration, Mr. Ebbinghouse discusses at length the events of July 4–7, 1997, including the fact that on July 7 he drove to Greensboro, Alabama, to obtain the declaration and then drove the document to Mobile for deposit in the court's night depository.[8] Counsel then states:

"This sequence of events shows that plaintiff's attorney did not know that Barry Dean Williams had knowledge that would give rise to him being listed in the disclosures and there has been no violation of Rule 26(A)(1)(a) [sic] or any other rule or order of this Court."

This statement raises two serious concerns. The first concern is that this statement fails to take into account that counsel was under a duty to determine with due diligence and disclose in a timely fashion what evidence supported his client's causes of action. Here, the only evidence of a report to Dairy Fresh's higher management of Mr. Morgan's harassing conduct is provided by Barry Dean Williams. Without that evidence, plaintiff has no Title VII/ § 1981 cause of action. Waiting until discovery has closed and further waiting until the dispositive motion response is due 1) to investigate and determine whether a person has discoverable information relevant to the disputed facts alleged with particularity and 2) to disclose that critical witness at the eleventh hour completely eviscerates the purpose of discovery and the letter and spirit of the Federal Rules of Civil Procedure.

Mr. Ebbinghouse essentially offers little more than a "lack of time" excuse as to why he failed to discover Barry Dean Williams' knowledge earlier in this litigation. The fact that Mr. Ebbinghouse was preoccupied with another case is not a justifiable excuse when viewed from Johnnie Williams' (or defendant's or the court's) point of view, especially when one considers that Mr. Ebbinghouse is not a solo practitioner. (His firm includes approximately 45 attorneys).

Moreover, the court nearly doubled the discovery period at Mr. Ebbinghouse's request. If this length of time was not sufficient for counsel, Mr. Ebbinghouse should have requested additional time.

---

6. In his "Motion For Extension of Time and/or Protective Order," (doc. 32), Mr. Ebbinghouse states that "[p]laintiff's attorney began trial of a nation[-]wide class action in the United States District Court for the Northern District of Alabama on May 12, 1997," and that "[t]he size of the case makes other attorneys unavailable because of their involvement in the trial of the case." Mot. for Ext. of Time, ¶¶ 1 & 2.

7. See Local Rule 83.5(g).

8. As plaintiff's counsel himself notes, the declaration and other materials filed in response to the motion for summary judgment were literally filed at the eleventh hour—11 p.m. on July 7.

The second concern is that the court file contains facially inconsistent statements as to when Mr. Ebbinghouse learned of Barry Dean Williams' knowledge. Although Mr. Ebbinghouse does not specifically identify in his quoted statement when he learned that Barry Dean Williams had discoverable information in this case, a fair reading of the statement suggests that counsel only learned of Barry Dean Williams' knowledge around July 4. A review of the court file, however, indicates that Mr. Ebbinghouse was probably aware that Barry Dean Williams was a "person likely to have discoverable information relevant to the disputed facts" as early as May 7 when counsel filed his first motion for an extension of time in which to file a response to the summary judgment motion. In that extension motion, Mr. Ebbinghouse stated that "potential witnesses from whom affidavits will need to be secured, reside in Greensboro." The only affidavit (actually a declaration) filed by counsel in response to the summary judgment is Barry Dean Williams', who as previously noted, resides in Greensboro.

The court concludes that in the exercise of due diligence and in the performance of his duties under the Federal Rules of Civil Procedure, Mr. Ebbinghouse should have discovered and disclosed that Barry Dean Williams, a witness *essential* to plaintiff's Title VII/§ 1981 claim, was a person likely to have discoverable information relevant to the disputed facts long before the close of discovery and long before filing his response to a dispositive motion. *See Taylor v. Food World, Inc.,* 946 F.Supp. 937, 940 n. 5 (N.D.Ala.1996) (affidavit was excluded in considering a motion for summary judgment because of plaintiff's failure to comply with Rule 26 disclosure requirements). Accordingly, after due consideration, it is

ORDERED that the motion to strike the declaration of Barry Dean Williams, (doc. 47), is GRANTED. In light of this ruling, it is FURTHER ORDERED that the "Motion to Correct Response to Defendant's Proposed Fact," (doc. 52), is MOOT.